IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| SAMUEL JOSEPH ORLANDO, ) | | |
|     Plaintiff, ) | Civil Action No. 5:23-cv-00012 | |
| ) | | |
| v. ) | MEMORANDUM OPINION & ORDER | |
| ) | | |
| BRISTOL NEAL, et al., ) | By:   Joel C. Hoppe | |
|     Defendants. ) |        United States Magistrate Judge | |

Plaintiff Samuel Joseph Orlando filed this suit alleging that Defendants Bristol and Rebecca Neal are civilly liable under Virginia common law and federal law, 18 U.S.C. § 2255, for sexually abusing and trafficking Orlando when he was a minor and using threats and promises, *id.* §§ 1591, 2421, including ones made via text and social media messaging, *id.* § 2422(b), to facilitate the abuse and trafficking. Compl. ¶¶ 57–97, 201–23, 243, ECF No. 1. Orlando subpoenaed nonparty David B. Briggman to depose him in this suit. ECF No. 20-1, at 2–3. Briggman moved to quash the subpoena. Movant's Mot. to Quash, ECF No. 19 (June 2, 2023). After his motion was fully briefed and set for a hearing, ECF Nos. 20, 28, Briggman filed three additional briefs without authorization. ECF Nos. 34, 42, 50; *see* Sched. Order ¶ 9, ECF No. 16; W.D. Va. Civ. R. 11(c)(1). Orlando moved to strike these filings, Pl.'s Mot. to Strike, ECF No. 52, and Briggman responded, opposing Orlando's motion, Movant's Opp'n to Mot. to Strike, ECF No. 54. The matter is before the Court on referral from the District Court pursuant to 28 U.S.C. § 636(b)(1)(A). ECF No. 16.

For the reasons that follow, the Court will grant in part and deny in part Orlando's motion to strike. The Court will deny Orlando's request for sanctions against Briggman.

I. Background

1

In May 2023, Orlando subpoenaed Briggman, a nonparty, to depose him in this matter. ECF No. 20-1, at 2–3. After being subpoenaed, Briggman started communicating with Orlando's attorneys via email. Pl.'s Mot. to Strike 10–14; ECF No. 52-2, at 1. Briggman began this correspondence by calling the attorney with whom he was communicating an "idiot" and referring to the matter as "childish bulls**t." ECF No. 52-2, at 1. On June 2, Briggman moved to quash the subpoena. The parties had fully briefed the matter by June 20, Pl.'s Resp. in Opp'n to Movant's Mot. to Quash, ECF No. 27; Movant's Reply to Pl.'s Opp'n, ECF No. 28, after which the Court allowed Orlando to file a surreply, Pl.'s Surreply to Movant's Mot. to Quash, ECF No. 47. *See* Min. Order of Aug. 8, 2023, ECF No. 44.

As Briggman pursued his motion to quash in this Court, he continued to communicate with Orlando's attorneys via email; he "leveled personal . . . attacks[] against" Orlando's attorneys in these communications, including personal taunts, insults, and threats of "criminal actions" and "bar complaints." Pl.'s Mot. to Strike 10–14. Briggman referred to counsel's other clients as "a**clowns" and repeatedly disparaged their professional skills and intelligence, sarcastically asking whether Briggman should "put quotes around lawyer" when referring to them, calling them "two idiots with bar cards," *id.* at 11, 16, 28, and stating that, "in [his] view," one of Orlando's attorneys "absolutely suck[ed] as a lawyer," ECF No. 52-3, among other insults. *See* ECF No. 52-2, at 18, 20, 26, 32, 35, 41–42. Briggman also repeatedly mocked one attorney's struggles with alcoholism. *Id.* at 1, 26, 32, 41; *see* Pl.'s Mot. to Strike 10 & n.4. After one court hearing, for example, Briggman told this attorney that Briggman thought he was "engaging in sanctionable conduct here, or [he] may be suffering from either a cognitive or substance abuse issue." *Id.* at 41. He ridiculed one of counsel's legal arguments, surmising that the attorney might have been "hung over in [his] employment law class." *Id.* Briggman also told

2

the attorney, "my intent is to cripple your ability to practice law." *Id.* at 35. When counsel objected to Briggman's impertinent comments, Briggman responded that the attorney "sound[ed] really kind of whiny" and accused him of "trying to restrict [Briggman's] rights under the First Amendment." *Id.* at 26.

During this time, Briggman submitted three additional filings related to his motion to quash. ECF Nos. 34, 42, 50; *see* Pl.'s Mot. to Strike 1, 3; Movant's Opp'n 3–6. First, on June 29, he filed a letter detailing what he described as "supplemental evidence" supporting his motion, informing the Court that one of Orlando's alleged guardians had attempted to subpoena Briggman in an unrelated matter. ECF No. 34, at 1–2; *see also* Movant's Opp'n 4. Second, on July 24, Briggman filed a letter to make "[c]orrection[s] of [the] [r]ecord" related to Orlando's attorney's statements at the June 23, 2023, hearing on Briggman's motion to quash. ECF No. 42, at 1; *see also* Movant's Opp'n 3. Third, on August 11, Briggman filed a "Response to Plaintiff's Sur-Reply to Movant's Motion to Quash." ECF No. 50, at 1; *see also* Movant's Opp'n 3. Briggman filed each of these briefs without first seeking leave, Pl.'s Mot. to Strike 1, 3, and the Court did not authorize his filings. *See* Sched. Order ¶ 9; W.D. Va. Civ. R. 11(c)(1).

\*

Orlando moved to strike Briggman's briefs under Local Rule 11(c)(1). *See* Pl.'s Mot. to Strike 3–4. He also requests that the Court use its "inherent authority" to sanction Briggman for his "egregious" conduct in his communications with Orlando's attorneys. *Id.* at 5–7, 10–15.[1]

---

[1] Orlando also requests that the Court impose a prospective prefiling injunction against Briggman under the All Writs Act, 28 U.S.C. § 1651(a), prohibiting Briggman from filing any briefs in this case unless they comply with the Federal Rules of Civil Procedure and the Local Rules, are filed for a proper purpose, are "relevant to the relief requested and matter pending before this [C]ourt," and are "not simply a vehicle for abuse, insult, or accusation against non[]parties." *Id.* at 18 (emphasis omitted). "Such a drastic remedy" as a prefiling injunction "must be used sparingly, however, consistent with constitutional guarantees of due process of law and access to the courts." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Here, Orlando essentially asks that the Court "require[] Mr. Briggman to

3

Briggman responds that the Court should not strike his briefs because they "introduce no new allegations" and he filed them to "'correct the record' of lies told by" Orlando. Movant's Opp'n 5–6. Briggman argues that sanctions are not warranted because the First Amendment protects his speech and "the Court should understand" that he was expressing "restrained anger and frustration" regarding the "abuse" he has allegedly experienced by being subjected to participating in this suit and other unrelated suits involving Orlando's alleged guardians and their business. *Id.* at 8, 10–12.

## II. Discussion

A.  *Striking Unauthorized Filings*

Under the Local Rules for the Western District of Virginia,

> [a]ll motions, unless otherwise directed by the Court . . ., must be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies. Unless otherwise directed by the Court, the opposing party must file a responsive brief and such supporting documents as are appropriate within 14 days after service, and the moving party may file a rebuttal brief within 7 days after the service of the opposing party's reply brief. No further briefs (including letter briefs) are to be submitted without first obtaining leave of court.

W.D. Va. Civ. R. 11(c)(1). The presiding District Judge's scheduling order in this case tracks the Local Rule's language. *See* Sched. Order ¶ 9 ("If any motion, properly filed and briefed, is to be opposed, a brief in opposition must be filed . . . . within fourteen (14) days of the date of service of the movant's brief. . . . If a moving party desires to submit a reply brief, it must be filed within seven (7) days of the date of service of the brief opposing the motion. A surreply brief may not be filed without prior leave of the court."). When a litigant files further briefs without leave, the

---

comply . . . with the [L]ocal [R]ules and the [Federal Rules of Civil Procedure]." Pl.'s Mot. to Strike 19. Striking Briggman's unauthorized briefs under Local Rule 11(c)(1) satisfies this request. Thus, imposing a prefiling injunction would be inappropriate. *See Cromer*, 390 F.3d at 818 (explaining that, in addition to other factors courts must consider, when "alternative sanctions" are "adequa[te]," a court should not impose a prefiling injunction).

judge may strike those briefs. *See Adams v. Moore*, No. 7:21cv392, 2023 WL 5192137, at *2 (W.D. Va. Aug. 11, 2023) (striking unauthorized surreply under Local Rule 11(c)(1)); *Chenevert v. Kanode*, No. 7:21cv562, 2022 WL 7031647, at *1 (W.D. Va. Oct. 12, 2022) (same).

Briggman contends that each unauthorized brief, ECF Nos. 34, 42, 50, related to his motion to quash. Movant's Opp'n 3–6. The first brief complained that Orlando's alleged guardian harassed Briggman by subpoenaing him in an unrelated matter. ECF No. 34, at 1–2; *see also* Movant's Opp'n 3–4. The second brief quarreled with Orlando's attorney's statements at the July 23 hearing on the motion to quash. Movant's Opp'n 3. The third brief in part responded to the arguments in Orlando's authorized surreply on the motion to quash. *Id.* Briggman's argument that the Court should not strike his briefs because they "introduce no new allegations" and were filed to "'correct the record' of lies told by" Orlando, *id.* at 5–6, misunderstands Local Rule 11(c)(1)'s plain language. Even if unauthorized filings "introduce no new allegations" and were filed to "correct the record," *id.*, they still may not be submitted without leave of court. *See* W.D. Va. Civ. Rule 11(c)(1).

Moreover, having reviewed Briggman's briefs, the Court finds that the first two are unhelpful to resolving any issues in the motion to quash and interject irrelevant information. ECF Nos. 34, 42. The only relevant information from Briggman's filings is found in his response to Orlando's surreply and concerns Briggman's asserted role as paralegal for the Defendants, which the parties discussed at length during the hearing. Much of the rest of that filing, however, like Briggman's other two filings, is irrelevant. Because Briggman's third brief is a response to Orlando's surreply and at least some of his argument is relevant, ECF No. 50, the Court will not strike it. *See, e.g.*, *Magnate, LLC v. U.S. Envtl. Prot. Agency*, No. 5:22cv40, 2023 WL 4169961, at *4 (W.D. Va. June 26, 2023) (declining to strike plaintiff's unauthorized surreply under Local

5

Rule 11(c)(1) "because [plaintiff] could just as easily have presented the arguments contained in the surreply at oral argument" on the motion to dismiss). Briggman filed his other two briefs without first obtaining the Court's leave to do so and the briefs contain irrelevant assertions; thus, the Court will grant Orlando's motion to strike those two briefs, ECF No. 34; ECF No. 42.

B.   *Sanctions*

Federal courts have inherent authority under Article III of the U.S. Constitution to sanction litigants for misconduct in litigation. *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). While "[m]agistrate judges have no inherent Article III powers," the Fourth Circuit has assumed without deciding that Article III district judges can delegate their inherent power to sanction to magistrate judges under 28 U.S.C. § 636(b)'s "additional duties" clause. *Reddick v. White*, 456 F. App'x 191, 192 (4th Cir. 2011) (per curiam) (citing 28 U.S.C. § 636(b)(3)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. A court may use its inherent powers to assess a sanction of attorney's fees against a party "in three circumstances: (1) where a party's litigation efforts directly benefit others, (2) where a party has willfully disobeyed a court order, and (3) where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Strag*, 55 F.3d at 955 (citing *Chambers*, 501 U.S. at 45–45).

A federal court's inherent power to sanction bad faith conduct extends to nonparties. *Id.* at *30. To sanction a nonparty, the court must determine that (1) the nonparty acted in bad faith when engaging in the behavior at issue, (2) the nonparty "was subject to the [c]ourt's inherent power to sanction at the time he did so," and (3) the "bad faith conduct disrupted or interfered with the underlying litigation." *Id.* at *32.

Here, Orlando requests that the Court assess sanctions in the form of attorney's fees against Briggman based on the content of Briggman's emails to Orlando's attorneys. Pl.'s Mot. to Strike 5–15. As to the first element, the Court finds that Briggman engaged in bad faith conduct. He sent emails to Orlando's attorneys mocking them, hurling insults, using profanity, and threatening to ruin their livelihood. *See* ECF No. 52-2, at 1, 11, 16, 18, 26, 28, 32, 35, 41–42; ECF No. 52-3; *cf. Carroll v. Jacques Admiralty Law Firm*, 110 F.3d 290, 292, 294 (5th Cir. 1997) (affirming district court's award of attorney's fees as a sanction for bad-faith conduct where defendant, who was also a practicing attorney, repeatedly "threatened and cursed at [plaintiff's] counsel" during a deposition in part because the defendant "knew better" than to behave in such an "abusive, profane, and pugnacious" manner); *Kilborn v. Bakhir*, No. 01cv1123, 2004 WL 2674491, at *2–4 (E.D. Va. Jan. 9, 2004) (awarding attorney's fees for bad-faith conduct where pro se plaintiff, who was also an attorney, personally emailed defendant, his counsel, and a potential witness threatening to have them prosecuted or deported for their conduct in the litigation, among other things), *aff'd*, 102 F. App'x 328, 329 (4th Cir. 2004) (per curiam). As to the second element, Briggman "brought himself within the scope of the Court's inherent Article III powers," *White*, 2013 WL 5295652, at *34–35, by filing his motion to quash, and Briggman engaged in bad faith conduct while subject to those powers, *see* ECF No. 52-2, at 14–42.

As to the third element, when a party requests sanctions against a nonparty "based only on the *content* of" the nonparty's past communications, *White*, 2013 WL 5295652, at *36, a court must first examine whether the First Amendment protects the communications, *see id.* at *35–64. Here, Orlando bases his request for sanctions solely on the contents of Briggman's emails. Pl.'s Mot. to Strike 5–15. The First Amendment protects even "vehement, caustic, and

7

sometimes unpleasantly sharp attacks" and "language that is 'vituperative, abusive, and inexact.'" *White*, 2013 WL 5295652, at *37 (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam)). As such, the First Amendment protects all but a few "well-defined and narrowly limited classes of speech," including, as most relevant here, true threats and fighting words. *Id.* at *38 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)). While Briggman "threatened" to bring criminal actions and bar complaints against Orlando's attorneys, Pl.'s Mot. to Strike 10–11, he did not "communicate a serious expression of an intent to commit an act of unlawful violence" and, thus, did not make "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Briggman's communications do not qualify as fighting words because although Briggman made direct personal insults, he did not address a listener who was "actually or likely to be present," *Cohen v. California*, 403 U.S. 15, 20 (1971), and the communications did not create a "likelihood that the person addressed would make an immediate violent response," *Gooding v. Wilson*, 405 U.S. 518, 528 (1972). Instead, Briggman used the kind of "opprobrious" and "abusive" language that the Supreme Court has held does not qualify as fighting words. *Id.* at 524–25. Because Briggman's communications do not fall within any of the categories of unprotected speech, they are "protected under the First Amendment." *White*, 2013 WL 5295652, at *38.

Thus, the Court must balance Briggman's First Amendment interests against the degree to which Briggman's communications interfered with the Court's interests in "the due and orderly administration of justice and in maintaining its own authority." *See id.* at *64–72. Here, Briggman's communications have not "discernibly impact[ed] either the subpoena dispute in which [Briggman] was directly involved or the prosecution of the underlying litigation" and, as a result, have not interfered with the Court's interests. *Id.* at *67–68. Additionally, with the motion

8

to quash resolved, Briggman's reason for filing documents in this case should be over. Therefore, "an award of sanctions against [Briggman], based on the content of his [emails], is not an appropriate exercise of [the Court's] discretion under Article III, especially in light of [Briggman]'s First Amendment interest in the relevant [communications]." *Id.* at *68. The Court will deny Orlando's request for sanctions against Briggman. Nevertheless, the Court finds that Briggman's personal attacks on Plaintiff's counsel were deplorable and fall well below the level of decorum that this Court expects from all those who appear before it, including nonparties appearing pro se. The Court will not tolerate additional uncivil conduct. *Cf. Sines v. Kessler*, No. 3:17cv72, 2020 WL 2827347, at *5 (W.D. Va. May 29, 2020) (instructing pro se defendant that he must "conduct himself with the same decorum, common courtesy, and professionalism expected from everyone who comes before [the Court], even when [he] is discussing this case and its participants" on social media (internal citations omitted)).

### III. Conclusion

For the foregoing reasons, Orlando's motion to strike, ECF No. 52, is hereby **GRANTED IN PART** and **DENIED IN PART**. The Clerk of Court is **DIRECTED** to **STRIKE** Briggman's unauthorized filings at ECF No. 34 and ECF No. 42. Orlando's request for sanctions is **DENIED**.

The Clerk shall send certified copies of this Memorandum Opinion & Order to the parties and to nonparty David Briggman.

It is so ORDERED.

ENTER: November 9, 2023

Joel C. Hoppe
United States Magistrate Judge