IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| SAMUEL JOSEPH ORLANDO, ) | | |
| Plaintiff, ) | Civil Action No. 5:23-cv-00012 | |
| ) | | |
| v. ) | MEMORANDUM OPINION & ORDER | |
| ) | | |
| BRISTOL NEAL, et al., ) | By: | Joel C. Hoppe |
| Defendants. ) | | United States Magistrate Judge |

Plaintiff Samuel Joseph Orlando filed this suit alleging that Defendants Bristol and Rebecca Neal are civilly liable under Virginia common law and federal law, 18 U.S.C. § 2255, for the sexual abuse and trafficking of Orlando when he was a minor and using threats and promises, *id.* §§ 1591, 2421, including ones made via text and social media messaging, *id.* § 2422(b), to facilitate the abuse and trafficking. Compl. ¶¶ 57–97, 201–23, 243–47, ECF No. 1. Orlando subpoenaed nonparty David B. Briggman to depose him in this matter. ECF No. 20-1, at 2–3; Movant's Mot. to Quash 1, ECF No. 19. Briggman moved to quash the subpoena, Fed. R. Civ. P. 45(d)(3), for a protective order, Fed. R. Civ. P. 26(c)(1), and for sanctions against Orlando's attorney, Fed. R. Civ. P. 26(g)(1)(B)(ii), (g)(3), asserting that the information Orlando seeks is irrelevant and privileged and that Orlando has subpoenaed Briggman for the improper purpose of harassing him. Movant's Br. in Supp. of Mot. to Quash 1–8, ECF No. 20; *see* Movant's Mot. to Quash. Orlando opposed Briggman's motion to quash. Pl.'s Opp'n to Mot. to Quash 1, ECF No. 27. The matter is before the Court on referral from the District Court pursuant to 28 U.S.C. § 636(b)(1)(A). ECF No. 16. The Court held a hearing on the motion on October 3, 2023.

For the reasons that follow, the Court will grant Briggman's motion to quash in part and enter a protective order as to information about Bradley Pollack's office policies, Rebeca Neal's

and nonparties' credibility, and Orlando's motive for bringing this suit. The Court will deny Briggman's motion to quash in part regarding communications between Defendants and Briggman about the claims and defenses in this case. Briggman's request for sanctions will be denied.

I. Background

In October 2022, Orlando filed this suit alleging that Bristol Neal sexually abused him as a minor, Rebecca Neal knew about and did nothing to stop or prevent the abuse, Defendants used threats and promises to take Orlando from Illinois to Virginia while he was a minor to continue the abuse, and Defendants sent threatening text and social media messages to facilitate the abuse. Compl. ¶¶ 57–97, 201–23, 243–47. In May 2023, Orlando subpoenaed Briggman to depose him in this matter. ECF No. 20-1, at 2–3. Briggman is a nonparty, *see generally* Compl.; Movant's Br.; Pl.'s Opp'n, who has done work for Defendants and/or their counsel of record, Bradley Pollack, Esq., in some capacity, *see* Movant's Br. 5; Pl.'s Surreply to Mot. to Quash 2, ECF No. 47.

Briggman moved to quash Orlando's subpoena, for a protective order, and for sanctions. Movant's Mot. to Quash. Briggman argues that the information Orlando seeks is irrelevant because Briggman has "no personal knowledge of the allegations contained in th[e] [c]omplaint." Movant's Br. 6; *see also* Movant's Reply 3, 7, ECF No. 28. Briggman also argues that attorney-client privilege protects the information Orlando seeks because Briggman is Pollack's paralegal. Movant's Br. 5–6; Movant's Reply 5–6. Briggman further argues that Orlando subpoenaed him for "[the] improper purpose" of "harassment." Movant's Br. 1–5, 7–8.[1]

---

[1] Briggman also argues that he cannot be deposed because he "is a witness against" one of Orlando's alleged guardians "in a pending perjury indictment," Movant's Br. 6–7, and "is actually or likely a witness" in "several criminal, civil, and administrative charges against Nexus and/or their principals,

2

Briggman argues that because Orlando seeks privileged and irrelevant information and issued the subpoena to harass Briggman, the Court should "issue a protective order . . . prohibit[ing] any further attempt to elicit testimony from [Briggman that] relates to this or any other issue." *Id.* at 8. As to sanctions, Briggman argues that the Court should "sanction Mr. Lawrence[, Orlando's attorney,] for having issued th[e] subpoena for an improper purpose, to-wit: to harass [Briggman]." *Id.*

Orlando argues that the Court should not quash the subpoena because the information he seeks is nonprivileged and relevant and because he did not subpoena Briggman to harass him. Pl.'s Opp'n 2–8. Orlando asserts that he seeks to depose Briggman for four reasons. First, before Briggman started working for Defendants or Pollack, he conducted "investigations" into Defendants and nonparties. *Id.* Orlando argues that because of these "investigations," Briggman likely has information about "the credibility of the Neals and . . . [n]onparties, who[] [Orlando] . . . believes will be called as witnesses." *Id.* He does not identify those potential nonparty witnesses. Orlando argues that this information is relevant because "it seems that the matter will simply be a 'he-said-she-said' affair that will be determined on credibility" *Id.* at 6. Second, Briggman investigated Rebecca Neal and "acted as the driving force behind a citizens['] petition to have [her] removed from political office in or about 2008." *Id.* at 3 & n.1. Orlando argues that if Briggman is Pollack's paralegal, Briggman's previous actions amount to having been "an adverse party to a client in a previous matter," that Briggman's conflicts as a paralegal "are imputable to a firm," and that there "is [a] very real possibility that . . . Pollack will need to be disqualified." *Id.* at 3–4, 3 n.3. Thus, Orlando seeks to depose Briggman to discover "internal screening methods utilized by . . . Pollack's firm" and thereby determine whether to move for

---

employees, or agents," Movant's Reply 4. The fact that Briggman may be a witness in other matters does not provide a basis to quash the subpoena.

Pollack's disqualification. *Id.* at 4–5. Third, because of Briggman's "investigations," he might have information about Orlando's motive for bringing this suit, which Orlando argues is relevant to "the 'counternarrative' [that Orlando] believes Defendants will advance, namely that [Orlando] lacks credibility . . . because he is motivated by a desire to protect his parents, motivated by financial gain, or motivated to cover up his own participation as a groomer." Pl.'s Surreply 4. Orlando asserts that none of this information is privileged because "virtually all materials [that he] seeks significantly predate the entrance of . . . Pollack (and Mr. Briggman acting as a paralegal) []in this case . . . with the exception of certain matters pertaining to the existence of any internal controls relating to ethics and conflicts." Pl.'s Opp'n 8. Fourth, Orlando alleges that he seeks to depose Briggman to discover whether Briggman acted as Pollack's paralegal for this case because if Briggman did not, then any relevant information he learned from Defendants is not privileged and is therefore discoverable. Pl.'s Surreply 6–7.

## II. Legal Framework

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019); *see also Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000) (explaining that "courts broadly construe relevancy in the context of discovery"). However, even relevant information may not be discoverable if it is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Jordan*, 921 F.3d at 188. Courts must consider several factors to assess proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources,

4

the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Litigants may subpoena nonparties to discover nonprivileged, relevant matter. *See* Fed. R. Civ. P. 45(a); *Bell Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) ("The scope of discovery for a nonparty litigant under a subpoena . . . is the same as the scope of a discovery request made upon a party." (cleaned up)). Because nonparties are "'strangers' to the litigation" who have "no dog in [the] fight," *Jordan*, 921 F.3d at 189 (alteration in original) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 2018)), when a litigant directs a subpoena to a nonparty, "courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally," *id.* (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)). When assessing a subpoena directed to a nonparty, a court must consider three additional factors: (1) whether the requesting party needs the information sought, meaning that the information must "likely (not just theoretically) . . . offer some value over and above what the requesting party already has"; (2) whether the requesting party can obtain the same or comparable information "that would also satisfy its needs" from other sources; and (3) whether the request will impose a "cognizable burden[]," including monetary costs, overbreadth, invasion of privacy, and confidentiality interests, on the nonparty. *Id.* at 189–90.

Under Rule 45, "[o]n timely motion, the court . . . must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). A subpoena subjects a nonparty to undue burden if it "seeks information irrelevant to the case or that would require [the] non-party to incur excessive expenditure of time or money." *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (per curiam). When determining whether to quash or modify a

5

subpoena directed to a nonparty, courts also consider Rule 26's general discovery standards. *Id.* at 812; *see also Jordan*, 921 F.3d at 189.

"[A]ny person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "This undue burden category 'encompasses situations where the subpoena seeks information irrelevant'" to the parties' claims or defenses, *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) (quoting *Cook*, 484 F. App'x at 812 n.7), and where the subpoena is so broad that it is not proportional to the needs of the case, *id.* (citing *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)).

A nonparty resisting discovery bears the burden of "explain[ing] specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009); *see In re Monitronics Int'l, Inc.*, No. 1:13md2493, 2014 WL 12623046, at *4 (N.D. W. Va. June 19, 2014) (applying this reasoning to a nonparty); *see Jordan*, 921 F.3d at 189 n.2 (a nonparty resisting discovery "bears the burdens of proof and persuasion"). "Specifically, the movant must make a particularized showing" that the information sought is irrelevant or not proportional to the needs of the case. *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). "[C]onclusory or generalized statements" opposing discovery "fail to satisfy this burden." *Id.* (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003)). Still, the requesting party "should be able to explain why it cannot obtain the same information, or

comparable information that would also satisfy its needs, from one of the parties to the litigation – or, in appropriate cases, from other third parties that would be more logical targets for the subpoena." *Jordan*, 921 F.3d at 189.

### III. Discussion

*A.     Relevance*

While Rule 26(b)(1) does not precisely define "relevance," "[c]ertainly, information is relevant if it logically relates to a party's claim or defense." *In re Am. Med. Sys., Inc.*, No. 2325, 2016 WL 3077904, at *4 (S.D. W. Va. May 31, 2016). "[A] fact must simply be 'germane to a claim or defense in the pleading' and, in determining whether a discovery request is relevant, courts 'must look beyond the allegation of a claim or defense to the controlling substantive law.'" *In re Short*, No. 21-50463, 2022 WL 301659, at *5 (Bankr. M.D.N.C. Jan. 28, 2022) (quoting 6 Moore's Federal Practice – Civil § 26.42 (3d ed. 2021)). "Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable" in some circumstances. Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2000 amendment.

Orlando's Complaint alleges that Defendants are liable for damages under 18 U.S.C. § 2255 because Bristol Neal sexually abused Orlando when Orlando was a minor, Rebecca Neal knew about the abuse but did nothing to stop or prevent it, Defendants used threats and promises to take Orlando from Illinois to Virginia while he was a minor to continue the abuse, *id.* §§ 1591, 2421, and Defendants sent Orlando threatening text and social media messages to facilitate the abuse, *id.* § 2422(b). Compl. ¶¶ 57–97, 201–23. Under 18 U.S.C. § 2255, a person who (1) when he was a minor (2) "was a victim of a violation of" certain federal criminal statutes, including 18 U.S.C. §§ 1591, 2421, or 2422, (3) "suffers a personal injury as a result of such violation,

regardless of whether the injury occurred while such person was a minor" may bring a civil suit against those who injured him. 18 U.S.C. § 2255; *see Doe 9 v. Varsity Brands, LLC*, No. 6:22cv3509, 2023 WL 4113198, at *4 (D.S.C. June 21, 2023). "[A] criminal conviction is not necessary in order for a victim to pursue a civil remedy under" 18 U.S.C. § 2255. *Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005). Instead, "a plaintiff need only show that the defendant committed one of the enumerated offenses by a preponderance of the evidence." *Doe 9*, 2023 WL 4113198, at *4.

To state a claim that a defendant violated 18 U.S.C. § 1591, a plaintiff must plausibly allege facts showing that the defendant "(1) knowingly recruited, transported, harbored, maintained, obtained, or enticed a person, (2) in or affecting interstate commerce, (3) knowing or in reckless disregard of the fact that the victim had not attained the age of eighteen years and would be made to engage in a commercial sex act." *United States v. Gunn*, 750 F. App'x 192, 194 (4th Cir. 2018) (per curiam). To state a claim for a violation of 18 U.S.C. § 2421, a plaintiff must plausibly plead facts demonstrating that the defendant (1) knowingly (2) transported "any individual in interstate or foreign commerce" (3) with the intent that the "individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. § 2421. To state a claim that a defendant violated 18 U.S.C. § 2422(b), a plaintiff must plausibly allege facts showing that the defendant (1) used "mail or any facility or means of interstate or foreign commerce" to (2) knowingly persuade, induce, entice, or coerce (3) a minor (4) "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. 2422(b).

The Complaint also alleges that Defendants are liable under Virginia common law for sexual battery because Bristol Neal sexually abused Orlando and Rebecca Neal knew about the abuse and "acted jointly with . . . [Bristol Neal] to ensure that . . . [the] abuse was facilitated and continued by ensuring that . . . [Orlando] made himself available for opportunities in which . . . [Bristol Neal] could continue to molest . . . [Orlando]." Compl. ¶¶ 57–97, 243–47. In Virginia, a defendant is liable in tort for sexual battery when the defendant (1) sexually abused another (2) "against his or her will by force, threat, intimidation, or ruse." *In re Long*, 504 B.R. 424, 434 (Bankr. W.D. Va. 2014).

Here, Briggman argues that he should not be subjected to a deposition because has no relevant information because he has "no personal knowledge of the allegations contained in th[e] [c]omplaint." Movant's Br. 6. Orlando contends that the subpoena was proper to discover several areas of relevant information.

First, Orlando seeks information from Briggman relating to Pollack's internal ethical screening practices. Pl.'s Opp'n 3–5. Orlando argues that this information is relevant to determining whether to pursue Pollack's disqualification from this case. *Id.* This argument misunderstands relevance in the context of discovery. Matters sought in discovery must be relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see Bell Inc.*, 2014 WL 1630754, at *6. The information Orlando seeks regarding Pollack's internal screening processes is straightforwardly irrelevant to the claims and defenses in this case about the alleged sexual abuse and trafficking of a minor. This information is not discoverable.

Second, Orlando seeks information from Briggman regarding Rebecca Neal's credibility based on his "investigations" into her tax history and his role "as the driving force behind a citizens['] petition to have Rebecca Neal removed from office in or about 2008." Pl.'s Opp'n 2–

9

3, 3 n.1. Orlando also seeks information from Briggman regarding the credibility of nonparties who Orlando "believes will be called as witnesses in this matter," but he does not identify any of those individuals. *Id.* at 8. He argues that "this case is likely to turn completely on credibility," making Rebecca Neal's and third parties' credibility relevant. *Id.* at 6–7. "It is well settled that credibility or impeachment information is discoverable." *Albert S. Smyth Co. v. Motes*, No. 17cv677, 2019 WL 10959830, at *4 (D. Md. May 9, 2019) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Such information must still be relevant to the parties' claims or defenses or to "discrediting [a] witness sponsoring . . . substantive evidence." *Id.* (quoting 6 Moore's Federal Practice – Civil § 26.45(2)(a) (2019)).

Information regarding Rebecca Neal's tax history and the citizens' petition to remove her from office in 2008 is, at best, "only peripherally related" to impeaching Rebecca Neal's credibility and, thus, irrelevant for impeachment purposes. *Albert S. Smyth Co.*, 2019 WL 10959830, at *4; 6 Moore's Federal Practice – Civil § 26.45(2)(b) (2023) ("In the absence of some justification on the part of the discovering party . . . requests for discovery delving into personal information only peripherally related to the substance of the testimony a witness is likely to give . . . will probably meet with a predisposition to treat them as discovery abuse."). As for nonparties' credibility, Orlando's assertion that the case will become a "'[]he-said-she-said' dispute of fact does not rise to the level of good cause necessary to unleash discovery into all parties' credibility," let alone the credibility of unidentified nonparties who Orlando believes Defendants will call as witnesses. *Butler v. King*, No. 2:18cv2522, 2019 WL 4440307, at *2 (D.S.C. Sept. 17, 2019) (citing *Barrington v. Mortg. IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *5 (S.D. Fla. Dec. 10, 2007); *Chamberlain v. Farmington Sav. Bank*, No. 3:06cv1437, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007); *Premer v. Corestaff Servs.,*

10

*L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005)). If mere assertions that a case will "turn completely on credibility," Pl.'s Opp'n 6–7, justified unleashing discovery into highly attenuated information about parties and nonparties, "there would be virtually no limits on discovery once a party invokes the mantra of 'credibility' as the basis for a discovery request." *Barrington*, 2007 WL 4370647, at *5. The impeachment information that Orlando seeks to develop relates to alleged conduct from more than ten years ago that has no connection to the claims or defenses in this case. Moreover, delving into potentially conflicting versions of Rebecca Neal's tax dealings and removal from office would likely create a mini-trial on allegations that have no bearing on this case. Orlando is prohibited from questioning Briggman about this information.

Third, Orlando seeks information from Briggman's "investigations" into Orlando's motive for bringing the suit. Pl.'s Surreply 4. Orlando argues that this information is relevant because Defendants will argue that Orlando is not credible based on his purported motives for filing this lawsuit—namely financial gain, to cover up his own alleged misconduct, and/or a "desire to protect his parents." *Id.* "It is well-established that in ordinary litigation, not involving the clean hands defense, the plaintiff's motive in bringing suit is not relevant to the subject matter of the litigation," let alone to the parties' claims and defenses, "and is not a matter for discovery." *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 414 (M.D.N.C. 1992); *see Rayfield Aviation, LLC v. Lyon Aviation, Inc.*, No. 1:11cv274, 2012 WL 3095332, at *2 (M.D.N.C. July 30, 2012). Defendants do not assert the defense of unclean hands, *see generally* Second Answer, ECF No. 6, and Orlando's motive for bringing this suit is not relevant to any claim or other defense in the parties' pleadings. *See Parsons*, 141 F.R.D. at 414.

Because the information Orlando seeks about Pollack's office policies, Rebecca Neal's and nonparties' credibility, and Orlando's motive for bringing this suit is irrelevant, it is not

11

discoverable, *see* Fed. R. Civ. P. 26(b)(1), and the subpoena is unduly burdensome, *Cook*, 484 F. App'x at 812 n.7; Fed. R. Civ. P. 45(d)(3)(A)(iv). The Court will grant Briggman's motion to the extent the subpoena seeks information regarding Pollack's internal office policies, Rebecca Neal's and nonparties' credibility, and Orlando's motive for bringing this suit. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv). Orlando shall not question Briggman about any of these topics. *See* Fed. R. Civ. P. 26(c)(1)(D), 45(d)(3)(A)(iv).

B.  *Attorney-Client Privilege*

As the fourth basis for Briggman's deposition, Orlando seeks information about communications between Defendants and Briggman regarding the actual claims and defenses in this case. Pl.'s Surreply 6–7. Certainly, information bearing on the existence or substance of such communications could "logically relate[]" to the claims or defenses asserted in the pleadings. *In re Am. Med. Sys., Inc.*, 2016 WL 3077904, at *4. Briggman resists his deposition on this ground, contending that the attorney-client privilege shields his communications because he was Pollack's paralegal in this case and he communicated with Defendants in that capacity. Movant's Br. 5–6.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of this privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The attorney-client privilege applies not only to confidential communications between clients and their attorneys, but also to such communications between clients and their attorneys' subordinates, including paralegals. *N.L.R.B. v. Interbake Foods, LLC*,

637 F.3d 492, 502 (4th Cir. 2011); *In re Kain*, No. 08-08404, 2011 WL 4625297, at *1 (Bankr. D.S.C. Sept. 30, 2011).

Here, Briggman argues that the Court should quash the deposition subpoena because he is Pollack's paralegal and attorney-client privilege applies to the information Orlando seeks, making it undiscoverable. Movant's Br. 5–6; Movant's Reply 5–6. However, "[b]ecause the attorney-client privilege exists for the benefit of the client, the client holds the privilege." *In re Grand Jury Proc. #5 Empaneled January 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). While attorneys may assert the privilege on behalf of their clients, *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173 (4th Cir. 2019) (citing *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967); Model Rules of Pro. Conduct r. 1.6(a), (c) (Am. Bar Ass'n 1983)), the Fourth Circuit has never held that a paralegal may do the same. Moreover, the Fourth Circuit has reasoned that attorneys may—and sometimes must—assert the privilege on behalf of clients because attorneys' rules of professional conduct impose certain duties on them, including the duty of confidentiality. *Id.* ("lawyers are obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients"). These rules do not apply to or bind paralegals, *see generally* Model Rules of Pro. Conduct (Am. Bar Ass'n 1983), and in Virginia, paralegals do not have similar duties, *Becoming a Paralegal in Virginia – VA*, ParalegalEDU, https://www.paralegaledu.org/virginia/#:~:text=As%20in%20other%20states%2C%20Virginia's ,responsibility%20for%20their%20professional%20conduct ("Virginia does not regulate its paralegals."). Indeed, paralegals may not practice law or hold themselves out to the public as qualified to do so. Rather, they act solely at the direction of an attorney who represents the client. Thus, it makes sense to impose a duty on the lawyer to assert a privilege for his client, but not extend that same duty to the paralegal who works for the lawyer.

Even if paralegals could assert attorney-client privilege on behalf of clients, Briggman has not adequately done so. The proponent asserting attorney-client privilege bears the burden of "demonstrat[ing] its applicability." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam). "The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that privilege was not waived." *Id.* The Fourth Circuit uses the "classic test" to determine whether the attorney-client privilege applies:

> [t]he privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950)). Here, Briggman asserts that he is Pollack's paralegal. Movant's Br. 5. In support of this assertion, Briggman offers only an invoice attached to an unauthorized filing showing that Pollack paid Briggman for "Motion for Stay Research and Writing Draft" in this case. ECF No. 50-1, at 6. Based on this evidence alone, Briggman asserts that "communications between [him] and [Rebecca Neal] have been in the capacity of paralegal for . . . Pollack"; thus, his "discussions with [Bristol and Rebecca Neal] since this matter was filed [are] clearly covered by attorney-client privilege[]." Movant's Br. 5–6. This invoice does not satisfy Briggman's burden of proof. The invoice does not show that Briggman was necessarily Pollack's subordinate in this matter.[2]

---

[2] While Briggman asserts that he is Pollack's paralegal in this case, *id.*, Pollack has made contradictory assertions regarding Briggman's status as a paralegal in this case. *See* Pl.'s Surreply 2; ECF No. 47-1. Pollack at one point asserted that Briggman was his paralegal. Pl.'s Surreply 2. Later, Pollack stated that Briggman was "not working for [him]" in this case. ECF No. 47-1, at 4, 6. When asked whether

14

It shows, at most, that Briggman invoiced Pollack for ghostwriting a brief in this matter. Briggman's evidence and representations do not show that Pollack generally retained Briggman's services to communicate with the Defendants as their lawyer's paralegal or perform any other services in this case. Furthermore, Briggman has not shown that any communications between him and Defendants otherwise meet the criteria for attorney-client communications. *See Jones*, 696 F.2d at 1072 (noting that for a communication to be privileged it must be made in private, to an attorney, for legal services, regarding fact(s), and for a proper purpose). Therefore, Briggman has not adequately shown that attorney-client privilege protects the information Orlando seeks. I do not find, however, that the Defendants or their attorney cannot assert the attorney-client privilege, or that they have waived the privilege. Rather, I find that Briggman, as a purported paralegal, cannot assert the privilege on Defendants' behalf and that even if he could, he has not carried his burden to show that the privilege applies.

C.     Harassment

Parties may not make discovery requests "for any improper purpose, such as to harass." Fed. R. Civ. P. 26(g)(1)(B)(ii). A "court must quash or modify a subpoena that 'subjects a person to undue burden,'" including harassment. *K-Beech, Inc. v. Does 1-31*, No. 12cv88, 2012 WL 1431652, at *3 (D. Md. Apr. 24, 2012) (quoting Fed. R. Civ. P. 45(d)(3)(iv)); *see also* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."). A court also "must . . . impose an appropriate sanction" if it finds the responsible

---

Briggman had ever worked for Pollack as a paralegal in this case, Pollack answered that "[a]t no time since [he] h[ad] been involved in the . . . matter ha[d] Briggman had any authority to act or speak on [his] behalf." *Id.* at 9. When asked whether that meant Briggman had never acted as Pollack's paralegal in this case, Pollack responded by asking "[w]hat is your definition of a paralegal?" *Id.* at 10.

15

party or attorney failed to "take reasonable steps to avoid imposing undue burden or expense" on the person subject to that subpoena. Fed. R. Civ. P. 45(d)(1).

Here, Briggman argues that the Court should quash the subpoena because Orlando subpoenaed Briggman for the purpose of harassing him. Movant's Br. 1–5, 7–8. Briggman asserts that Orlando must have subpoenaed Briggman to harass him because Briggman "has no personal knowledge of the allegations contained in the[e] [c]omplaint." *Id.* at 6. Briggman also asserts that Orlando must have subpoenaed him for the improper purpose of harassment because of the past actions of Orlando's alleged guardians and their business, Nexus. *Id.* at 2–3; Movant's Reply 6. Briggman asserts that Orlando's alleged guardians and Nexus "attempted to use their subpoena powers . . . to harass [Briggman] by using an overly[ ]broad subpoena" in another case, Movant's Br. 2, accused Briggman of a "'data breach' and attempted to reopen discovery . . . specifically to depose [Briggman]," Movant's Reply 6, attempted to depose Briggman in a separate matter, Movant's Br. 3, and "dr[ew] legally[ ]baseless criminal charges against [Briggman]," *id.*

Much of the conduct that Briggman complains about occurred in other cases. Moreover, Orlando has provided several reasons for deposing Briggman. Although the Court finds that most of those grounds are impermissible, one of the grounds—the Defendants' communications with Briggman about the case—provides a basis for Orlando to ask Briggman questions under oath, as long as those communications are not privileged. The Court finds that the subpoena for Briggman's deposition was not issued solely for harassment. Accordingly, sanctions are not warranted.

Because the information Orlando seeks regarding Defendants' communications with Briggman about claims and defenses in this case is relevant for discovery purposes, Briggman

16

has not adequately asserted the attorney-client privilege on Defendants' behalf (and, as a paralegal, cannot do so), and Orlando has not subpoenaed Briggman for an improper purpose, the Court will deny Briggman's motion to quash in part to the extent that Orlando seeks information regarding Defendants' communications with Briggman about claims and defenses in this case. Orlando may question Briggman about that topic alone.[3] *See* Fed. R. Civ. P. 26(c)(1)(D).

## IV. Conclusion

For the foregoing reasons, Briggman's motion to quash and for protective order, ECF No. 19, is **GRANTED IN PART** with respect to information about Pollack's office policies, Rebecca Neal's and nonparties' credibility, and Orlando's motive for bringing this suit. Briggman's motion is **DENIED IN PART** with respect to information regarding Briggman's communications with Defendants about the claims and defenses in this case. Briggman's request for sanctions is **DENIED**.

It is so ORDERED.

ENTER: November 9, 2023

Joel C. Hoppe
U.S. Magistrate Judge

---

[3] This ruling is without prejudice the Defendants or their counsel asserting the attorney-client privilege. Put differently, absent a proper objection by Defendants or their counsel, Briggman may not refuse to answer Orlando's otherwise proper questions about his communications with a Defendant(s) on grounds that those communications may be protected by the attorney-client privilege. *See* Fed. R. Civ. P. 37(b)(1)–(2).